## In re ANDOVER DATA SERVICES, INC., Debtor.

### Bankruptcy No. 82 B 12245 (PA).

United States Bankruptcy Court, S.D. New York.

Dec. 14, 1983.

Deutsch & Spring, New York City, for Andover Data Services, Inc.; Charles C. Luetke, New York City, of counsel.

Robert L. Beerman, New York City, for Edith Helbig.

Zissu, Berman, Halper, Barron & Gumbinger, New York City, for Joan Cosgrove; Leo Fox, New York City, of counsel.

Robert L. Kassel, New York City, for Phyllis Linett; Robert W. Forman, New York City, of counsel.

Parker, Auspitz, Neesemann & Delehanty, P.C., New York City, for Nixdorf Computer Corp.; Hollis L. Hyans, New York City, of counsel.

Walker, Greenfeig & Metro, Rockville, for Andover Data Services, Inc., Md.; Jerry S. Dunietz, Rockville, Md., of counsel.

·PRUDENCE B. ABRAM, Bankruptcy Judge.

By application dated December 7, 1983, Andover Data Services, Inc., a New York corporation ("Andover-New York"), and a debtor and debtor-in-possession in a Chapter 11 case pending before this court since November 22, 1982, Joan Cosgrove ("Cosgrove") and Edith Helbig ("Helbig") sought an order from this court transferring a Chapter 11 case filed on November 22, 1983 in the Bankruptcy Court for the District of Maryland, by Andover Data Services, Inc., a Maryland corporation ("Andover-Maryland"), Docket No. 83–# A1718, to this court. It is undisputed that Andover-Maryland is an affiliate of Andover-New York by virtue of common ownership. Phyllis Linett ("Linett"), Cosgrove and Helbig are the shareholders of Andover-New York and it appears that their respective holdings are 37.5%, 37.5% and 25%. Linett asserts that she owns two-thirds of the shares of Andover-Maryland, that Helbig owns the remaining one-third and that Cosgrove owns no shares, this latter assertion being disputed by Cosgrove. All three, Linett, Cosgrove and Helbig, agree that Andover-New York and Andover-Maryland are commonly owned to a greater extent than the 20% required to make the two corporations "af-

filiates" within the meaning of Bankruptcy Code § 101(2).

The motion to change venue of the Andover-Maryland case, which was filed on the first anniversary of the Andover-New York filing, was made in this court as provided by Bankruptcy Rule 1014. Rule 1014, which is not materially different in this respect from former Bankruptcy Rule 116, provides as follows:

"(b) *Procedure when Petitions Involving The Same Debtor or Related Debtors Are Filed in Different Courts.*

If petitions commencing cases under the Code are filed in different districts by or against * * * * a debtor and an affiliate, on motion filed in the court in which the first petition is filed and after hearing or notice to the petitioners and other persons as directed by the court, the court may determine, for the convenience of the parties and witnesses, in the interest of justice the court or courts in which the case or cases should proceed."

This court scheduled a hearing on the motion for December 12 on notice to Andover-Maryland, its twenty largest creditors, Linett, and counsel for Nixdorf Computer Corporation, a large creditor of both companies, which is seeking to recover possession of certain computer equipment central to their respective operations, a matter more fully discussed below. Linett and Andover-Maryland opposed the motion at the scheduled hearing. Andover-Maryland was represented by its bankruptcy counsel in the Chapter 11 case. Ms. Linett appeared through her New York counsel. One creditor, Bernard Greutker, was present in court and supported the transfer motion. Although not appearing, The Equitable Life Assurance Society, Andover-Maryland's landlord, advised the court and counsel for Andover-New York by telephone that it opposed the transfer.

No witnesses were offered and the court admitted into evidence at the request of Andover-Maryland a deposition of Cosgrove taken January 11, 1983 in an action captioned *Nixdorf Computer Corporation v.*

*Andover Data Services, Inc. and Andover Data Services, Inc., Maryland,* U.S.D.C. S.D. N.Y., 82 Civ. 2893 (CLB), which was offered for the light it might shed on the relationship between Andover-New York and Andover-Maryland. In addition, Andover-Maryland had placed in evidence twenty-four pages stated to constitute the entire bankruptcy court file in the Andover-Maryland Chapter 11 case. Counsel for Cosgrove offered and had admitted three exhibits consisting of minutes of shareholders' and directors' meetings held by Andover-Maryland in 1977 and 1978, apparently for the purpose of showing Cosgrove's stock ownership at that time.

A question has been raised whether the filing of the Andover-Maryland petition was duly authorized. It does appear to the court from the evidence offered at the hearing that at least some effort was made to comply with corporate formalities. However, as that matter has not been fully presented and briefed the court does not consider it at this time.

Andover-Maryland's business is conducted from its offices in Gaithersburg, Maryland and Linett is normally present at its offices and in daily charge of its operations. Although counsel for Andover-Maryland had a somewhat limited knowledge of its actual business, Andover-Maryland is apparently in the data entry and processing business and conducts a business similar but not identical to that conducted by Andover-New York. Both are service businesses. According to Cosgrove's deposition, Cosgrove runs Andover-New York and Linett runs Andover-Maryland. At the time of her deposition Cosgrove stated that she talked to Linett virtually every day and frequently spent weekends in the Washington, D.C. area and saw Linett regularly on those visits. Linett also visited New York. It should be noted that Linett signed the Andover-New York petition as president and that she signed at least some Andover-New York checks during 1983 as evidenced by copies of checks affixed to papers in connection with the Nixdorf application discussed below.

Relations among Cosgrove, Linett and Helbig are strained, to say the least. Andover-New York owes approximately $250,-000 in pre-petition payroll taxes, for which it must be assumed the three are potentially personally liable. On October 12, 1983, Andover-New York filed an action in the bankruptcy court against Linett, Helbig and Cosgrove for payment of loans, for an accounting and for conversion of corporate assets and seeks judgment for $673,463.41 against the three in addition to other relief including punitive damages of $1,000,000 as against Linett. Linett has filed an answer demanding judgment dismissing the complaint and is represented in that action by New York counsel.

In response to a threat of immediate repossession, on November 1, 1983, Andover-New York made application (the "Nixdorf application") by way of order to show cause for an order avoiding transfers of money made by the debtor to Nixdorf earlier this year for the benefit of Andover-Maryland or directing that the money be credited to the account of Andover-New York. Pending hearing, Nixdorf has been stayed from cancelling its equipment leases with Andover-New York or taking possession of the computer equipment. The computer equipment is a key component of the business operations as the data entry and processing work is done on the equipment. On November 15, 1983, Andover-Maryland filed an affidavit in opposition to the motion by its attorney Robert W. Forman, of the office of Robert L. Kassel, the same attorney representing Linett individually in the action discussed above.

The immediate background to the Nixdorf application is a settlement agreement among Andover-New York, Andover-Maryland and Nixdorf dated April 1, 1983 approved by this court on May 26, 1983. In the settlement agreement, the parties agreed that Andover-New York then owed Nixdorf $389,333 and that Andover-Maryland then owed Nixdorf $194,667. Provision is made in the settlement agreement for certain lump sum payments to be made against this amount, for payment of ongo-

ing charges and for certain credits to be made against the companies' indebtedness to Nixdorf if certain payments were made. Confessions of judgment were given by both Andover-New York and Andover-Maryland. Andover-Maryland unconditionally guaranteed one-third of the outstanding obligations of Andover-New York under the settlement agreement.

Andover-New York was at the time it filed the Nixdorf application approximately $95,000 in arrears in payments due under the settlement agreement. In its application Andover-New York seeks to have some $53,367.38 of payments made to Nixdorf by checks drawn on Andover-New York's bank account credited to Andover-New York rather than to Andover-Maryland. Although if this were done it would not bring Andover-New York current, it certainly would cause Andover-Maryland to be in arrears. Because of the Andover-Maryland filing the day before the adjourned hearing date, the hearing on the application was adjourned to December 14 after Cosgrove and Helbig arranged for certain payments to be made to Nixdorf and the hearing has been further adjourned to December 19.

Andover-Maryland's answer to the Nixdorf application asserts, among other things, that the application was not properly authorized by the board of directors as no board of directors meeting was held to authorize the applications, as alleged to be required by the New York Business Corporation Law. In key part material to the venue motion, the affidavit states:

"*The Transfers Sought to be Avoided Were Made in the Usual Course of Business for Good and Valuable Consideration*

"15. Since the organization of Andover Maryland in 1976, Andover New York and Andover Maryland have run an inter-company account whereby Andover Maryland would pay certain expenses of Andover New York and Andover New York would pay certain expenses of Andover Maryland.

"16. This practice continued after the filing of Andover New York's bankruptcy petition on November 22, 1982. For example, Andover Maryland continued to pay for, among other things, cars leased by Andover New York, insurance covering those cars, Andover New York's American Express bills and Andover New York's obligations to Bernard Greutker (a former principal of the company). Similarly, Andover New York continued to pay certain obligations of Andover Maryland including portions of Andover Maryland's obligations to Nixdorf.

"17. The inter-company transfers and payments described in Paragraph 16 above were made with the knowledge and consent of the sole operating principal of the debtor, Joan Cosgrove. The transfers were not made to defraud creditors but rather, were made for valid consideration following the established course of business between Andover New York and Andover Maryland.

"18. Thus, the payments made by Andover New York to Nixdorf for the benefit of Andover Maryland cannot be viewed in isolation. Instead, they must be viewed in light of the preexisting business relationship between Andover New York and Andover Maryland. In this light, it would be inequitable to void a transfer of $54,090 made for the benefit of Andover Maryland by Andover New York where such payment was authorized by the debtor-in-possession and was made pursuant to a business arrangement by which Andover Maryland had advanced to Andover New York a substantially equivalent amount of money since the bankruptcy petition was filed."

This court is not aware of any order authorizing intercompany borrowings.

Counsel for Andover-Maryland in opposing the venue change relied heavily on the fact that a majority of the creditors of Andover-Maryland are located in the Maryland area, that the landlord has opposed transfer, and that the business operations of Andover-Maryland are separate and distinct from those of Andover-New York and that the business and at least its physical

assets are located in Maryland. Heavy reliance was placed on the alleged five-part criteria used by the court to analyze a venue motion in *In re Hadar Leasing International Co., Inc.,* 14 B.R. 819 (D.C. S.D.N.Y. 1981). The pertinent portion of the *Hadar* opinion reads:

"In order to refine the broad and somewhat nebulous terms 'convenience of witnesses' and 'interest of justice', courts have considered five concrete standards. These are 1) proximity of creditors of every kind to the court; 2) proximity of the debtor to the court; 3) proximity of witnesses necessary to administration of the estate; 4) location of assets and 5) economic administration of the estate. *Matter of Commonwealth Oil Refining Co.,* 596 F.2d 1239, 1247 (5th Cir.1979). Occasionally, courts have applied a sixth standard; whether the intertwined relationship of debtors requires proceedings in one district. *See In re Banker's Trust,* 403 F.2d 16 (7th Cir.1968), citing *In Re Hudik-Ross,* 198 F.Supp. 695 (S.D.N.Y. 1961)." 14 B.R. at 820.

It is thus apparent that there was a sixth element, critical to this case, which was not necessary for the court to consider in *Hadar* as the case did not involve related debtors.

Each venue motion must be weighed on its individual facts. The *Hadar* criteria are not statutory; they are only useful guidelines to reaching a just result. The statute governing venue, 28 U.S.C. § 1475, provides simply

"A bankruptcy court may transfer a case under title 11 * * * in the interest of justice and for the convenience of the parties."

The interest of justice requires that the Andover-Maryland case be removed to this court. These two cases are irrevocably intertwined by virtue of their common ownership. Significant actions taken in the last year since the Andover-New York petition was filed involve Andover-Maryland and its shareholders.

*In re Petroleum Tank Lines, Inc.,* 10 B.R. 286 (Bkrtcy.W.D.N.Y.1981), involved a challenge to the venue of a case filed where an affiliate had previously filed, on the grounds that the second debtor's business was located elsewhere. After considering the argument for transfer based on alleged greater ease and efficiency of administration in the district where the business and assets were located and where most of the witnesses were located and on greater convenience to creditors in that district, the court denied the motion. In support of its conclusion to keep the cases in a single forum the court noted that it had two closely related debtors who had leased equipment to each other. There were defaults in loan payments and creditors in one case would necessarily be interested in the outcome of the other.

"In addition, it appears from other proceedings before this Court in the Upstate case, wherein the relationship of Upstate and PTL have been examined at length, that the two corporations are so interdependent that their fortunes may rise or fall together. There is a distinct possibility that these cases may be consolidated. In any event, it appears that the negotiation of any reorganization or liquidation plan will be greatly facilitated if both cases are before a single court." 10 B.R. at 288.

Compare *In re Cash and Carry Tool Supply Co., Inc.,* 22 B.R. 281 (Bkrtcy.D.N.M.1982) (Trustee's motion for change of venue denied on conclusion that trustee would be only party convenienced by the change).

The facts of the *Petroleum Tank* case are quite similar to the present case. This court like the court in *Petroleum Tank* is of the opinion that both cases must be in one court. The efficient and effective administration of justice and the protection of all parties, creditors and shareholders alike, requires it. The convenience of at least one, and possibly two of the shareholders, as well as of a major creditor, Nixdorf, is served by transferring the Andover-Maryland case to New York. The only objecting creditor, the landlord, is a national company headquartered in New York and thus not substantially inconvenienced. Linett, the objecting shareholder, has been appearing

in the Andover-New York case for some time through New York counsel. Either forum involves some inconvenience but in providing in 28 U.S.C. § 1472 that venue was proper either where the principal place of business was located or where there is a pending case involving an affiliate Congress clearly recognized these competing factors.

The motion to change venue is granted and the Andover-Maryland Chapter 11 case will be transferred to this court.

The Clerk of Court for the Bankruptcy Court for the District of Maryland will be directed to transmit the file to the Clerk of this Bankruptcy Court as soon as possible.

It is so ordered.