## In re RIDGELY COMMUNICATIONS, INC., Debtor.

### Bankruptcy No. 89–5–1705–JS.

United States Bankruptcy Court, D. Maryland.

Oct. 26, 1989.

F. Thomas Rafferty, Schwarz, Greenblatt & Rafferty, Baltimore, Md., for debtor.

Lewis Goodman, Miles & Stockbridge, Baltimore, Md., for Ameritrust Co., N.A.

Richard M. Kremen, Semmes, Bowen & Semmes, Baltimore, Md., for Signet Bank, Maryland.

## MEMORANDUM OPINION DENYING MOTION TO TRANSFER THE CASE

JAMES F. SCHNEIDER, Bankruptcy Judge.

This matter came on for hearing before the United States Bankruptcy Court for the District of Maryland at Baltimore upon the motion of Ameritrust Co., N.A., a secured creditor, to transfer the case to the United States Bankruptcy Court for the District of South Carolina [P. 13]. Based upon the following findings of fact and conclusions of law, the motion will be denied.

FINDINGS OF FACT

This Court adopts the following stipulated facts filed at the hearing:

1. Ridgely Communications, Inc. filed its voluntary Chapter 11 bankruptcy petition on May 23, 1989.

2. Anne and David Kramer filed their voluntary Chapter 11 bankruptcy petition on May 23, 1989, just prior to the filing by Ridgely.

3. The Chapter 11 bankruptcy estate of Anne and David Kramer owns two-thirds of the stock of Ridgely.

4. The Chapter 11 bankruptcy estate of Anne and David Kramer asserts a claim of approximately $1,000,000 against Ridgely. The Kramers assert that the claim has a third priority secured status as a result of a filed deed of trust and financing statements filed more than one year prior to the filing of the bankruptcy petitions.

5. Ridgely Communications, Inc. is a Delaware corporation.

6. Ridgely Communications, Inc. is engaged in the business of radio broadcasting.

7. On or about August 27, 1986, Ridgely signed a contract to purchase radio station WVOC–AM.

8. In that contract, Ridgely referred to its principal place of business as Baltimore, Maryland.

9. On or about August 27, 1986, Ridgely signed a contract to purchase radio station WCEZ–FM.

10. In that contract, Ridgely referred to its principal place of business as Baltimore, Maryland.

11. On December 10, 1986, Ridgely executed and delivered to Ameritrust a Security Agreement.

12. In that Security Agreement, Ridgely represented to Ameritrust that its principal place of business was Columbia, South Carolina and all of the collateral was located there.

13. On December 31, 1986, Ridgely Communications, Inc. purchased two (2) radio stations (WVOC–AM and WCEZ–FM) (the "stations").

14. The closing on Ridgely Communications, Inc.'s purchase of the stations occurred in Columbia, South Carolina.

15. The documents for closing were prepared by Wiley, Rein & Fielding, Washington, D.C., on behalf of Ridgely and by Berick, Pearlman & Mills, Cleveland, Ohio, and McNair Law Firm, Columbia, South Carolina, on behalf of Ameritrust Company, N.A.

16. The Federal Communications Commission ("FCC") license to operate the stations authorizes the operation' of two radio stations in Columbia, South Carolina only.

17. Ridgely Communication's FCC license does not authorize the operation of a radio station outside of Columbia, South Carolina.

18. The stations are located and licensed in Columbia, South Carolina.

19. Ridgely Communications, Inc. has never owned any other radio stations.

20. The shareholders of Ridgely Communications, Inc. are:

Anne Kramer    – 100 Shares
David Kramer   – 100 Shares
Robert Kramer  – 100 Shares

21. Anne and David Kramer are Chapter 11 debtors in the case pending in the District of Maryland.

22. Ridgely Communications, Inc. has interests in the following real property:

a. 3737 Covennent Road

Columbia, South Carolina

(Fee Simple); and

b. 56 Radio Lane

Columbia, South Carolina

(Leasehold)

23. All personal property and equipment in which Ridgely Communications, Inc. holds an interest is located in Columbia, South Carolina.

24. Ridgely Communications, Inc., as a foreign corporation, has only been qualified to carry on or transact business in South Carolina.

25. Ridgely Communications, Inc., as a foreign corporation, is not now, nor has it ever been, qualified to do business in the State of Maryland.

26. Ridgely Communications, Inc. has never filed a tax return with the State of Maryland.

27. Ridgely Communications, Inc. has filed tax returns with the State of South Carolina.

28. Ridgely believes that it does not owe any corporate income taxes to the State of South Carolina.

29. Ridgely Communications, Inc. has never withheld taxes payable to the State of Maryland.

30. Ridgely Communications, Inc. has withheld taxes payable to the State of South Carolina.

31. Ridgely believes that it does not owe any arrearages on state income taxes withheld from its employees in South Carolina.

32. Neither Anne Kramer nor David Kramer have ever received a salary from Ridgely Communications, Inc.

33. Ridgely Communications, Inc. has never had any employees located in the State of Maryland.

34. All of Ridgely Communications, Inc.'s employees have always been located in South Carolina, except for Robert Kramer who was also located in New York, New York.

35. Mr. Charles Jones who resided in Columbia, South Carolina at the time, managed the stations from January 1, 1986 until April of 1987.

36. Mr. Jones currently resides in Albuquerque, New Mexico.

37. From April, 1987 through September, 1987, the stations were managed by Robert Kramer, William Ridings and Jack Lovelady.

38. While managing the stations, Mr. Ridings and Mr. Lovelady resided in South Carolina.

39. Mr. Lovelady resided in Albuquerque, New Mexico until recently when he returned to South Carolina.

40. During the time Robert Kramer managed the stations, although he also maintained a residence in New York City, he maintained an apartment and stayed several days a week in Columbia, South Carolina.

41. Robert Kramer currently resides in Santa Monica, California.

42. From September, 1987 until mid-November, 1988, Margaret Ford managed the stations.

43. During the time she managed the stations, Ms. Ford resided in Columbia, South Carolina.

44. Ms. Ford currently resides in Charlotte, North Carolina.

45. From September, 1987 through the present date, Anne Kramer has been involved in daily discussions with the

management of the stations to discuss operation occurring in South Carolina.

46. Anne Kramer and David Kramer reside in Stevenson, Maryland.

47. Anne Kramer confers from Baltimore with the station manager and the station bookkeeper on a daily basis via telephone and fax machine to obtain information regarding station operations occurring in South Carolina.

48. Anne Kramer and David Kramer have never been employees of Ridgely Communications, Inc.

49. Upon telephone requests for financial and operational information by Ameritrust, Anne Kramer consistently responded that she would have to inquire with the stations' South Carolina employees for such financial and operational information.

50. From November, 1988 through the current date the stations have been managed by Mr. Gene Crim.

51. Mr. Crim resides in Columbia, South Carolina.

52. The stations' budgets are prepared by Mr. Crim in South Carolina.

53. Anne Kramer is involved in certain decisions concerning budgeting, personnel and the overall conduct of Ridgely Communications, Inc.'s business.

54. The corporate minute book and shareholder records of Ridgely Communications, Inc. are maintained in Baltimore, Maryland.

55. The general ledgers, budgets, financial reports (including all financial reports required by the Ameritrust loan agreements and the Agreed Order Authorizing Use of Cash Collateral) and the day to day operational books and records of Ridgely Communications, Inc., including traffic management, accounts receivable and accounts payable ledgers are prepared, generated and maintained in Columbia, South Carolina.

56. Copies of some summaries of financial information listed in the previous item are forwarded to Anne Kramer in Baltimore and Sarah Rechin, Vice President,

Ameritrust, Cleveland, Ohio and to various other parties-in-interest.

57. Employees of Ridgely Communications, Inc. do not come to Baltimore to conduct business on behalf of Ridgely Communications, Inc.

58. The budget projections required under the Agreed Cash Collateral Order are prepared in Columbia, South Carolina.

59. Anne Kramer travels to Columbia, South Carolina to conduct business on behalf of Ridgely Communications, Inc.

60. Other than the corporate minute book and shareholder records, no other property of Ridgely Communications, Inc. is located outside of South Carolina.

61. Ridgely Communications, Inc.'s employees' paychecks are issued by a firm in Charlotte, North Carolina and are signed by the station manager, Mr. Crim, in Columbia, South Carolina.

62. There is no telephone directory listing in the State of Maryland for Ridgely Communications, Inc.

63. All of these stations' marketing and advertising sales staff are located in South Carolina.

64. A large percentage of the stations' revenues result from national sales, necessitating the stations' sales personnel to travel frequently to Atlanta and New York.

65. Wolpoff and Associates, an accounting firm located in Baltimore, Maryland, performed accounting services on behalf of Ridgely Communications, Inc. from the fall of 1986 through the fall of 1988.

66. Resnick, Fedder and Silverman, an accounting firm with offices in Baltimore, Maryland and Charlotte, North Carolina provided accounting services for Ridgely Communications, Inc.

67. Resnick, Fedder and Silverman's Charlotte, North Carolina office prepared monthly and year-end financial statements for Ridgely Communications, Inc. and mailed those statements to Anne and David Kramer in Baltimore, Maryland.

68. Wolpoff and Associates and Resnick, Fedder and Silverman prepared the

Ridgely Communications, Inc. tax returns filed with the State of South Carolina.

69. Ridgely Communications, Inc. has had discussions with several potential purchasers concerning the possible sale of the stations. These individuals or companies are located in Washington, D.C., New York, Albuquerque, New Mexico, San Antonio, Texas and Seattle, Washington.

70. At the time of the filing of its voluntary petition, Ridgely Communications, Inc. was a party to eight (8) lawsuits filed in the following jurisdictions:

(a) District of Columbia—one (1) law suit

(b) Court of Common Pleas of Cuyahoga County, Ohio—one (1) law suit

(c) Court of Common Pleas for the County of Richland, South Carolina—six (6) law suits.

71. Resnick, Fedder and Silverman, the debtor's former accountants, have sued to collect their account receivable in South Carolina.

72. Signet Bank/Maryland is not a creditor in the Ridgely Communications, Inc. bankruptcy proceeding. (Ameritrust objects to the relevancy of this Stipulation).

73. Signet Bank/Maryland holds a claim in excess of $1,000,000 in the individual Chapter 11 estate of Anne and David Kramer.

74. In the year preceding the filing of Ridgely Communications, Inc.'s voluntary petition, Ridgely Communications, Inc. retained the following counsel:

(a) W. Joseph Issacs of Columbia, South Carolina—to handle various South Carolina litigation matters;

(b) Clifford Koon of Columbia, South Carolina—on a contingency basis to handle the radio tower damages claim in Columbia, South Carolina;

(c) Mark Lipp of Washington, D.C.—to handle FCC matters;

(d) F. Thomas Rafferty of Baltimore, Maryland—to handle bankruptcy matters.

75. At the time of the filing of its voluntary petition, Ridgely Communications, Inc. was a party to fifteen (15) executory contracts with parties located in the following states:

a. Maryland — One
b. North Carolina — One
c. Kentucky — One
d. Colorado — One
e. Tennessee — One
f. Massachusetts — One
g. Michigan — One
h. South Carolina — Three
i. New York — Four

76. At the time of the filing of its voluntary petition, Ridgely Communications, Inc. had 65 (sixty-five) unsecured creditors located in the following states:

a. South Carolina — 32 creditors
b. North Carolina — 6 creditors
c. New York — 5 creditors
d. Washington, D.C. — 3 creditors
e. Maryland — 2 creditors
f. Georgia — 2 creditors
g. California — 2 creditors
h. Tennessee — 2 creditors
i. Illinois — 1 creditor
j. Texas — 1 creditor
k. Massachusetts — 1 creditor
l. Florida — 1 creditor
m. Rhode Island — 1 creditor
n. Virginia — 1 creditor
o. Colorado — 1 creditor
p. Pennsylvania — 1 creditor
q. Minnesota — 1 creditor
r. Kentucky — 1 creditor
s. Michigan — 1 creditor

77. At the time of the filing of its voluntary petition, Ridgely Communications, Inc. had seven (7) secured creditors holding eight (8) separate secured claims.

78. One secured creditor is located in each of the following seven states:

a. South Carolina
b. New York
c. Maryland (the insiders/shareholders: the Kramers)
d. New Mexico
e. Georgia
f. Ohio
g. Virginia

79. The apparent priority, creditor name, creditor location, and approximate amount, of the first six secured claims are as follows:

| Priority | Name | Location | Amount | |
|---|---|---|---|---|
| 1 | Ameritrust | Ohio | $3,600,000 | |
| 2 | Limetree | New York | 560,000 | |
| 3 | Kramer estate | Baltimore | 1,000,000 | |
| 4 | Jones | New Mexico | 130,000 | (disputed) |
| 5 | Limetree | New York | 75,000 | |
| 6 | Chapman | Georgia | 50,000 | |

80. Certain creditors may assert that the claim of the Kramers should be equitably subordinated.

81. The financing statement for First Citizens Bank suggests it claims a first priority in a particular item of financed equipment.

82. The only such Maryland secured creditors are Anne and David Kramer, insiders and 66.6% shareholders of Ridgely Communications, Inc.

83. All of the secured creditors of Ridgely Communications, Inc. filed financing statements perfecting their security interests with the office of the Secretary of State of South Carolina.

84. None of the secured creditors of Ridgely Communications, Inc., including Anne and David Kramer, filed financing statements with the State of Maryland.

85. As part of the closing on the purchase, Ameritrust Company, N.A., received a $400,000 letter of credit issued by Sterling Bank & Trust Company, Baltimore, Maryland, on the credit of Anne and David Kramer.

86. As part of the closing, Ameritrust Company, N.A. received the guaranties of Anne, David and Robert Kramer for the debt of Ridgely Communications, Inc.

87. Ameritrust Company, N.A., has obtained a judgment based on the guarantee by Anne and David Kramer and Robert Kramer in Cleveland, Ohio. Ameritrust has registered that judgment against Anne and David Kramer in Maryland within 90 days prior to the filing of the Chapter 11 petitions. (Ameritrust objects to this Stipulation on the basis of relevancy).

*CONCLUSIONS OF LAW*

1. A motion for a transfer of venue is a core matter concerning the administration of the estate which a bankruptcy judge may hear and determine. 28 U.S.C. § 157(b)(2)(A); *In re Thomasson,* 60 B.R. 629 (Bankr.M.D.Tenn.1986).

2. The venue of the Kramers' petition and that of Ridgely is properly laid in the District of Maryland, pursuant to Section 1408 of the Judicial Code.[1]

3. Ridgely is a closely-held corporation, ⅔ of the stock of which is owned by Anne and David Kramer. According to the definition of "affiliate" contained in Section 101(2) of the Bankruptcy Code,[2] the Kramers and Ridgely are affiliates of each other.

---

1. Section 1408 provides:

Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—
(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or
(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.
28 U.S.C. § 1408.

2. Section 101(2)(A) and (B) provides:
(2) "affiliate" means—
(A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—

4. The instant motion to transfer case [P. 13] was filed pursuant to Bankruptcy Rule 1014(a)(1).[3]

5. Section 1412 of the Judicial Code[4] is also applicable to the instant motion before the Court.

6. The decision whether to grant or deny a motion for transfer of a bankruptcy case is within the sound discretion of the bankruptcy court. The discretion to grant a permissive change of venue must be exercised with caution. The leading case which stands for this proposition is *In the Matter of Commonwealth Oil Refining Co.*, 596 F.2d 1239 (5th Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980), which was decided pursuant to former Bankruptcy Rule 116(a)[5] in a Chapter XI reorganization case under the former Bankruptcy Act of 1898, as amended.[6]

In *Commonwealth Oil*, the Fifth Circuit endorsed six factors which the bankruptcy court had devised in determining the convenience of the parties.

(1) The proximity of creditors of every kind to the Court;

(2) The proximity of the debtor to the Court;

(3) The proximity of the witnesses necessary to the administration of the estate;

(4) The location of the assets;

(5) The economic administration of the estate;

(6) The necessity for ancillary administration if [liquidation] should result.

*Id.* at 1247. Of these six, the court held the most important factor to be the economic administration of the estate. The court took the pragmatic approach to "the interest of justice" prong, holding that justice was best served by a course of action calculated to maintain the debtor as a viable business. *Id.* at 1248.

7. An additional factor is employed in cases involving affiliated debtors, as in the case *sub judice*, that is "whether the intertwined relationship of debtors requires proceedings in one district." *In re Hadar Leasing International Co., Inc.*, 14 B.R. 819, 820 (S.D.N.Y.1981), *citing In re Banker's Trust*, 403 F.2d 16 (7th Cir.1968) and *In re Hudik–Ross*, 198 F.Supp. 695 (S.D.N.Y.1961). *See also In re Waits*, 70 B.R. 591 (Bankr.S.D.N.Y.1987); *In re Ryan*, 38 B.R. 917 (Bankr.D.Ill.1984); *In re Andover Data Services, Inc.*, 35 B.R. 297 (Bankr.S.D.N.Y.1983).

■ 8. The interrelationship of the Kramers and Ridgely militates against the granting of the motion. The administration of these closely-related cases will be rendered more difficult and expensive if they are separated. The Kramers personally guaranteed the Ridgely obligations which are owed to its two largest secured

---

(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;
(B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—
(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote[.]
11 U.S.C. § 101(2)(A), (B) (Supp. V 1987).

3. Bankruptcy Rule 1014(a)(1) provides:
(a) *Dismissal and Transfer of Cases.*

(1) *Cases Filed in Proper District.* If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.
*Id.*

4. Section 1412 provides "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for convenience of the parties." 28 U.S.C. § 1412.

5. Former Bankruptcy Rule 116 was the forerunner of Bankruptcy Rule 1014, quoted *infra*.

6. Bankruptcy Act of 1898, ch. 541, 30 Stat. 544 as amended.

creditors. These guarantees create common questions of law and fact, the determination of which will materially affect whether a reorganization for both Ridgely Communications, Inc. and the Kramers is possible.

9. The interstate character of Ridgely's broadcasting operation militates against viewing its place of business in strictly local terms. While approximately one-half of its secured creditors are located in South Carolina, the other half are spread out all over the country. Transferring the case to South Carolina would be just as inconvenient to them as retaining the case in Maryland would be inconvenient to the South Carolinians. The ability of creditors to file claims would not be prejudiced in either case. The Court notes that Ameritrust is an Ohio resident whose convenience would not seem to be promoted by transferring the case. With one exception, the other secured creditors are all located outside South Carolina. The Court essentially views this factor as a neutral one in the equation.

10. The proximity of the Kramers to this Court weighs heavily against transferring this case to South Carolina. They may be characterized as "the brains" of the operation, and if so, Maryland is where the business decisions of Ridgely are made. *In re Nantucket Apartment Associates*, 80 B.R. 154 (Bankr.E.D.Mo.1987). In this regard, whether or not the corporation is licensed to do business here, it is undeniable that Ridgely's business management is Maryland-based.

11. The movant has not met its burden of proof on the issue of whether witnesses necessary to the administration of the bankruptcy estate would be inconvenienced if the case proceeded here. "No matter which venue is selected some witnesses will be inconvenienced." *In re Willows Ltd. Partnership*, 87 B.R. 684, 686 (Bankr.S. D.Ala.1988).

12. There is no doubt that the principal assets of the debtor are located in South Carolina. However, the corporate minute book and shareholder records are kept in Baltimore. The fact that the radio stations are located in South Carolina will have minimal impact upon the administration of the bankruptcy case in Maryland because the operation of the radio stations is subject to federal regulation by the F.C.C.; state laws governing security interests in the debtor's real estate are essentially standard between jurisdictions which have adopted the Uniform Commercial Code; and the debtor's efforts to reorganize anticipate the private sale of the stations rather than their retention.

13. It is evident that the single most important factor, the economic administration of this estate, will be best served by retaining the case in Maryland, which will avoid costly duplication of effort and promote efficiency. *See* Conclusions No. 8 and 10.

14. The final factor, the need for ancillary administration in the event of possible liquidation, does not have much effect upon the decision one way or the other. It may be the least relevant factor where, as here, the Court has concluded that an efficient reorganization will be promoted by retaining the case. *See Commonwealth*, 596 F.2d at 1248.

Based upon the foregoing considerations, the Court has previously granted motions to consolidate the Kramers' bankruptcy case and that of Ridgely.

ORDER ACCORDINGLY.