**In re PALMER LAKE PLAZA, LLC, Debtor.**

**No. 12–11183–11.**

United States Bankruptcy Court, W.D. Wisconsin.

April 16, 2012.

Neal L. Wolf, Esq., Neal Wolf & Associates, LLC, Chicago, IL, for Debtor.

John McDonald, Esq., Briggs and Morgan, P.A., Minneapolis, MN, for Creditor U.S. Bank National Association.

## ORDER

THOMAS S. UTSCHIG, Bankruptcy Judge.

This case was filed on March 6, 2012. Shortly after the filing, U.S. Bank National Association filed a motion to transfer venue or, in the alternative, to dismiss the case. The parties have briefed these issues fully. There has been very little other activity in the case. The meeting of

creditors is scheduled to be conducted on April 17, 2012, and the debtor only recently filed its schedules and statement of financial affairs. No creditors' committee has been appointed. U.S. Bank requests that the Court transfer venue of this case to the District of Minnesota or dismiss the case outright for a lack of good faith. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), and the Court has jurisdiction under 28 U.S.C. § 1334.

The debtor acknowledges that it has no tangible connection to this district, or Wisconsin in general. The debtor's primary asset appears to be an office building in Brooklyn Center, Minnesota. The debtor is a limited liability company organized under Minnesota law, the petition identifies Minnesota as the debtor's principal place of business, and the sole member of the debtor is himself a Minnesota resident. U.S. Bank is the debtor's largest secured creditor and is based in the Minneapolis area, as are the majority of the debtor's unsecured creditors. The debtor's ability to file in this district hinges entirely upon its "affiliation" with the debtors in two other pending chapter 11 cases, *In re Tomah Hospitality LLC*, Case No. 12–10894, and *In re Tomah Hotel Properties, LLC*, Case No. 12–10895. Together, those debtors own and operate a hotel located in Tomah, Wisconsin. The debtor in this case shares common ownership with the *Tomah* debtors (i.e., all three entities are owned by Jeffrey Wirth, the same sole member).

■ Under 28 U.S.C. § 1408(2), venue in bankruptcy cases is appropriate in a judicial district in which there is already a pending case "concerning such person's affiliate, general partner, or partnership." For the purposes of the bankruptcy code, the term "person" includes an individual, partnership or corporation, as well as limited liability companies. See 11 U.S.C. §§ 101(9)(A)(iv) and 101(41); *In re Longview Aluminum, L.L.C.*, 657 F.3d 507, 509 n. 1 (7th Cir.2011) (the statutory definition of "person" includes corporations, and the statutory definition of "corporation" includes "unincorporated companies" such as the debtor). The "affiliate" of a debtor is statutorily defined as including a corporation which features a measure of common ownership or control. *See* 11 U.S.C. § 101(2)(B) ("affiliate" includes a corporation in which at least a 20% interest is held by an "entity" which also controls at least 20% of the debtor). Consequently, the debtor was at least statutorily justified in filing the case in this district. That does not, however, resolve whether a change of venue is appropriate under 28 U.S.C. § 1412, which allows the court to transfer a case to another district "in the interest of justice or for the convenience of the parties."

■ The debtor suggests that its choice of forum is entitled to "great weight" as long as it is proper, and that the location of the debtor's real estate holdings should not be a significant concern. For this latter proposition, the debtor cites *In re One–Eighty Invest., Ltd.*, 18 B.R. 725, 729 (Bankr.N.D.Ill.1981) ("In a reorganization proceeding, however, the location of the assets of the Debtor is not particularly important."). It is true that the burden rests on the moving party to demonstrate that transfer is appropriate, and the power to transfer a case should be exercised cautiously. *See In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y.2008) (citing *Enron Corp. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 638 (Bankr.S.D.N.Y.2004)). But even if the real estate agent's mantra of "location, location, location" is not *controlling* when considering a transfer request, the location of the assets still remains *relevant* to the outcome.

■ Indeed, in *Dunmore Homes* the court noted that it is often the business model of the particular debtor that must be examined. In a case like *Enron,* where the debtor's assets are scattered across many jurisdictions, or in a situation in which the "financial restructuring" of the debtor may take place in a particular forum, the location of the assets is appropriately rendered less important. 380 B.R. at 673. This case features a debtor at the opposite end of the spectrum, with a single parcel of real estate as its only asset. When a debtor's assets consist solely of real property, transfer is typically justified because "matters concerning real property have always been of local concern and traditionally are decided at the situs of the property." *Id.* (citing *In re Enron Corp.,* 284 B.R. 376, 392 (Bankr.S.D.N.Y.2002) (abrogated on other grounds)).

This balancing of interests is well illustrated by the case of *In re Ridgely Communications, Inc.,* 107 B.R. 72 (Bankr. D.Md.1989). In *Ridgely,* the debtor's sole assets were located in South Carolina. The debtor's principals (a husband and wife) had previously filed their personal case in Maryland and sought to file the company's bankruptcy there as well under § 1408(2)'s "affiliate" rule. The court denied the creditor's request to transfer the corporate case to South Carolina, finding that the individual debtors were the "brains" of the operation and that Maryland was where the business decisions of the company were made. Given that the cases were closely related, the court found that administration would be rendered

more difficult and expensive if they were separated. As U.S. Bank notes, however, the challenge in this case is that the debtor's "brains" are located in Minnesota, not Wisconsin, as are any witnesses who might be called in connection with the case. In that regard it is important to note that the *Tomah* affiliates are separate businesses and do not manage the affairs of this debtor. Although Mr. Wirth has himself recently filed a bankruptcy case in Wisconsin, his own connections with this forum are also insubstantial.[1]

The debtor suggests that the ultimate reorganization plan may involve the merger or consolidation of the various entities owned by Mr. Wirth (including this debtor, the *Tomah* entities, and other companies which have yet to file for bankruptcy). This vague potential for restructuring must be juxtaposed against the fact that in the context of this case the costs of administration may be significantly increased by the lack of any meaningful connection to the prospective forum.[2] The debtor argues that U.S. Bank has not demonstrated that it or other creditors would be inconvenienced by the handling of this case in this forum and notes that this Court has allowed matters to be handled telephonically in both this case and the affiliated cases. While it is true that this Court handles routine preliminary telephone conferences for the convenience of the parties, this Court's longstanding procedures relating to contested hearings require attorneys, parties, and witnesses to appear in person. Telephonic participation in a contested evidentiary hearing is permitted

---

1. The selection of this Court for Mr. Wirth's personal case is premised upon the same provision of § 1408(2) as the present case. U.S. Bank has now filed a motion to transfer his case to Minnesota for similar reasons: namely, that he is a Minnesota resident whose creditors and assets are primarily located in Minnesota.

2. Regarding the possible restructuring of Mr. Wirth's various businesses the debtor's surreply indicates that the current debtors and others who "may" become debtors "may well" file a plan which calls for merger or consolidation. What appears clear is that the debtor's efforts at reorganization are likely to be strenuously contested by the bank.

only on a limited basis, and the Court requires witnesses to appear in person as it is difficult, if not impossible, to assess the demeanor and credibility of someone who appears telephonically. Likewise, attorneys who envision participating in any extensive examination of witnesses are obligated to appear at evidentiary hearings in person, rather than by telephone. It would, as a matter of fact, be simpler for such hearings to be held in Minnesota, where the parties, assets, and witnesses are located, rather than in Wisconsin.

■ Ultimately, the decision to transfer a case must be based on the facts of the particular case, and should be based upon the conditions found in § 1412: namely, whether transfer is in the "interest of justice" or the "convenience of the parties." *Dunmore Homes*, 380 B.R. at 670. The "interests of justice" has been characterized as a "broad and flexible standard." *Id.* at 671. The factors considered include whether: (i) the transfer would promote the economic and efficient administration of the bankruptcy estate, (ii) the interests of judicial economy would be served by the transfer, (iii) the parties would be able to receive a fair hearing in each of the possible venues, (iv) either forum has an interest in having the controversy decided within its borders, (v) the enforcement of any judgment would be affected by the transfer, and (vi) the plaintiffs original choice of forum should be disturbed. *Id.* at 671–72.

■ Likewise, when considering the convenience of the parties, courts typically focus on the following questions: (i) the proximity of creditors of every kind to the court, (ii) the proximity of the debtor, (iii) the proximity of witnesses necessary to the administration of the estate, (iv) the location of the assets, (v) the economic administration of the estate, and (vi) the necessity for ancillary administration should

liquidation result. *Id.* at 672. The debtor may have chosen to file in Wisconsin and venue here may technically be proper under § 1408, but the real question is to determine what result will be best for the economic and efficient administration of the estate. *See In re Red Door Property Management LLC,* 2011 WL 5592910, at *5 (Bankr.S.D.Miss. Nov. 16, 2011) (citing *Puerto Rico v. Commonwealth Oil Ref. Co. (In re Commonwealth Oil Refining Co.),* 596 F.2d 1239, 1247 (5th Cir.1979)). If a transfer would clearly make the administration of the case more efficient for *all* concerned, the debtor's initial selection of the forum cannot be the controlling factor.

In this case, the Court finds transfer to be appropriate. The assets, creditors, potential witnesses, and the debtor's sole member are all located in Minnesota. The only connection with this forum is the fact that two "affiliated" entities recently filed cases here. The entities are affiliated in the sense of common ownership, but appear to have completely separate estates. Each entity holds separate assets, and there does not appear to be any significant commonality among creditors. Jeffrey Wirth, the sole member of these three debtors, has now filed his own bankruptcy in this Court. The debtor suggests that this fact may also justify retention of the case, although Mr. Wirth also appears to have no connection with Wisconsin other than his "affiliation" with the two *Tomah* debtors and U.S. Bank has also filed a motion to transfer that case to the District of Minnesota. The debtor has not indicated the source of any potential post-petition financing, but it does not appear that the choice of Wisconsin will aid in that process. Instead, the location of management personnel and the "brains" of the debtor's operation all point to Minnesota as the appropriate forum.

Taken together, the various factors all weigh in favor of transfer of venue.

Accordingly,

IT IS ORDERED that the motion to transfer this case to the United States Bankruptcy Court for the District of Minnesota is granted. Given this decision, the Court declines to rule on the creditor's motion to dismiss the case, which may be considered by the Minnesota bankruptcy court after the case is transferred.