In the Matter of The SPORTING CLUB AT ILLINOIS CENTER, a Delaware Limited Partnership, Boca Raton Sports Associates, a Florida Limited Partnership, Debtors.

Bankruptcy Nos. N91–02082–WHD to N91–02083–WHD.

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Oct. 10, 1991.

Timothy J. Ramsey, Bodker, Ramsey & Andrews, Atlanta, Ga., James M. Dash, Stephen P. Kikoler, Rosenthal & Schanfield, Chicago, Ill., for E.W. Corrigan Const. Co.

Patrick F. McManemin, J. Michael McBride, Russell W. King, McManemin & Smith, P.C., Dallas, Tex., Paul W. Bonapfel, James C. Cifelli, Lamberth, Bonapfel, Cifelli, Willson & Stokes, P.C., Atlanta, Ga., for debtors.

Robert F. Kidd, Steven O. Gasser, Graham and James, San Francisco, Cal., Mary Grace Diehl and Scott F. Norberg, Troutman, Sanders, Lockerman and Ashmore, Atlanta, Ga., for Mitusi Trust & Banking Co., Ltd. and C. Itoh, Ltd.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter is before the Court on Emergency Motions for Change of Venue filed in the above-referenced cases. Because the questions of fact and law are substantially the same for both cases, they are consolidated for purposes of this Order. This is a core proceeding, for which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A). The following constitutes

the Court's Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

On July 30, 1991, Chapter 11 reorganization petitions were filed in this Court by the Atlanta Sporting Club, Ltd. ("Atlanta Club"), the Sporting Club at Illinois Center ("Illinois Club"), and Boca Raton Sports Associates, Ltd. ("Boca Raton Club").[1] The Illinois and Boca Raton Clubs stated their present business address as 21 East Brook Bend, Peachtree City, Georgia, which is within the Northern District of Georgia. Shortly after the petitions were filed, on August 6, 1991, an Emergency Motion for Change of Venue was filed by C. Itoh & Co., Ltd. ("C. Itoh"), asking this Court to transfer the Illinois Club proceeding to the Northern District of Illinois. Similarly, on the same date, a motion was filed by Mitsui Trust & Banking Company, Ltd. ("Mitsui"), asking that the Boca Raton case be transferred to the Southern District of Florida. On August 8, 1991, E.W. Corrigan Construction Co. ("Corrigan"), the largest unsecured creditor of the Illinois Club, also filed a Motion to Transfer or Dismiss that case. Additionally, the United States Trustee supports the motions filed by C. Itoh and Mitsui.[2] In response to these motions, the Illinois and Boca Raton Clubs have moved for a dismissal of the Motions for Change of Venue pursuant to Federal Rule of Civil Procedure 41(b), on the grounds that the movants have failed to provide sufficient evidence to warrant the relief requested. Hearings were held on August 15, 1991, and August 29, 1991, after which the parties were directed to submit final briefs on the issue.

In order to determine whether venue is proper in this district for the Illinois and Boca Raton cases, a summary of the ownership interests of all three Clubs is necessary.[3] The Atlanta Club is a limited partnership organized under the laws of the state of California. The Jack Naiman Trust ("Naiman Trust") is the general partner of the debtor Club, holding an 85% equity interest. Jack Naiman is the trustee of the Naiman Trust. The limited partners of the Atlanta Club are the Naiman Trust, holding a 4.5% interest, and Sporting Club Venture, Ltd., which owns a 10.5% interest. Thus, the Naiman Trust holds approximately 89.5% of the equity in the Atlanta Club. Since the Atlanta Club has its principal place of business and assets in Atlanta, Georgia, there has been no objection that venue is proper in this district.

The Illinois Club is a limited partnership organized under the laws of the state of Delaware. The general partner is Illinois Sporting Development, a California limited partnership which holds a 42% equity interest in the Illinois Club. The general partner of Illinois Sporting Development, holding a 76.2% interest, is Sportland Development of Illinois, Inc., which is wholly owned by the Naiman Trust, and the limited partner, holding a 23.8% interest, is K. Kurokawa U.S.A., Inc. The limited partners of the Illinois Club, and their respective interests, are as follows: Suntory International Corporation (23.2%); Orix Corp. (5.8%); J.C. West, Inc. (23.2%); and, ILF Company, Ltd. (5.8%).

The Boca Raton Club is a limited partnership organized under the laws of Florida. The general partner is Naiman/Florida Sporting Development, a California limited partnership. The general partner of Naiman/Florida Sporting Development, holding a 51% equity interest, is Naiman Sporting Clubs, Inc. which is wholly owned by the Naiman Trust. The limited partners of Naiman/Florida Sporting Development are the Naiman Trust, holding a 29% interest, and K. Kurokawa U.S.A., Inc., with a 20% interest. The limited partners of the Boca Raton Club, and their relative equity inter-

---

**1.** The three individual debtors will be collectively referred to as the "Clubs."

**2.** The Court also notes that several other creditors have joined the Motions for Change of Venue in both the Illinois and Boca Raton proceedings.

**3.** To clearly illustrate the structure of the entities, charts have been incorporated into this Order. See Exhibits Nos. 1 through 3, attached.

ests are as follows: J.C. West, Inc., a wholly-owned subsidiary of C. Itoh & Co., Ltd. (13.75%); Shiba Kosan U.S.A., Inc. (18.-33%); S.F. Capital Corp. (9.17%); Kameya Corp. (9.17%); and Fukutoku Leasing Co., Ltd. (4.58%). Each of the Clubs involved in this proceeding are managed by SPOA, Inc. ("SPOA"), a California corporation, which manages eleven sporting clubs.

The movants in these proceedings, C. Itoh and Mitsui, are the two major secured lenders of the Clubs. Because the relationship between the movants and the limited partners of the Clubs is important in making the determination of proper venue, a summary of the 1989 loan transactions to each of the Clubs is helpful. In 1989, the Atlanta Club borrowed $13,000,000.00 from Mitsui. The following entities, and the amount loaned by each, participated in the loan: Mitsui ($4,000,000.00); C. Itoh ($3,000,000.00); Fukutoku Leasing ($3,000,-000.00); and Crown Finance Corp. ($3,000,-000.00). The record indicates that there may be some commonality of ownership of these four entities, with no entity holding more than a two percent ownership of the other entities. Additionally, as previously stated, Fukutoku is a limited partner of the Boca Raton Club.

The loan to the Illinois Club was made in 1989 in the principal amount of $20,200,-000.00. The participants in the loan were as follows: C. Itoh ($8,510,000.00); Showa Leasing U.S.A., Inc. ($4,252,000.00); Sanshin (U.S.A.), Inc. ($3,189,000.00); Orient Leasing U.S.A., Inc., now known as Orix U.S.A. Corp. ($3,189,000.00); and Inter-Lease (U.S.A.), Inc. ($1,060,000.00). C. Itoh's wholly-owned subsidiary, J.C. West, is a limited partner of the Illinois Club, as well as the Boca Raton Club, and Orix U.S.A. Corp. is a wholly-owned subsidiary of Orix Corp., also a limited partner of the Illinois Club. Additionally, Showa Leasing U.S.A., which is a wholly-owned subsidiary of Showa Leasing Co., Ltd. (a lender in the Boca Raton loan), owns 100% of the stock of ILF Company, a limited partner of the Illinois Club.

The loan to the Boca Raton Club, in the principal amount of $13,000,000.00, was made by Mitsui in 1989. The participation interests in the loan are as follows: Mitsui ($4,000,000.00); C. Itoh ($4,000,000.00); Fukutoku ($3,000,000.00); and Showa Leasing, Ltd. ($2,000,000.00). Again, Fukutoku is also a limited partner of the Boca Raton Club, and J.C. West, Inc., is a wholly-owned subsidiary of C. Itoh. Thus, it is evident that although the loans were separate transactions, some of the loan participants and some of the limited partners of the Clubs are related.

The Illinois Club's sole place of business and only assets are located in Chicago, Illinois. Of the 241 creditors listed in the Illinois Club's schedules, five are located in Georgia. Over 140 are located in Illinois, including fifteen of the twenty largest unsecured creditors. The sole place of business and assets of the Boca Raton Club are located in Boca Raton, Florida. Of the 63 creditors listed in the Boca Raton Club's petition, only two are located in Georgia. Thirty seven are located in Florida, including fourteen of the twenty largest unsecured creditors. The only connection with the Northern District of Georgia that either the Illinois or the Boca Raton Clubs have are the Peachtree City address stated on the petition, and the presence of the Naiman Trust in the chain of ownership of all three Clubs.

Counsel for the Illinois and Boca Raton Clubs make several arguments as to why this Court should retain these proceedings. First, they contend that venue is proper in this district. Further, they contend that even if the Court finds that venue is improper, this Court should retain the cases in the interest of justice and for the convenience of the parties. In contrast, C. Itoh and Mitsui argue that venue is improper in this district, and as a consequence, the Court is required to either transfer or dismiss the proceedings. C. Itoh and Mitsui also contend that even if venue is proper, the Court should transfer the cases to the Northern District of Illinois and the Southern District of Florida, respectively, in the interest of justice and for the convenience of the parties.

## CONCLUSIONS OF LAW

### 1. VENUE UNDER 28 U.S.C. § 1408

■ Counsel for the Clubs first contend that venue is proper in the Northern District of Georgia for the Illinois and Boca Raton Clubs under 28 U.S.C. § 1408.[4] Initially, they argued that the requirements of 28 U.S.C. § 1408(1) were met. However, this argument may be quickly dismissed. The principal place of business, and the sole assets of the Illinois Club are in Chicago, Illinois. The principal place of business, and the sole assets of the Boca Raton Club are in Boca Raton, Florida. The only connection that either of the Clubs has in this district is a lease for office space in Peachtree City, Georgia, the address stated on the petitions of both the Illinois and Boca Raton Clubs. However, the evidence strongly indicates that this space was leased by the Illinois and Boca Raton Clubs, along with the Atlanta Club, for the sole purpose of obtaining venue in this district. The office space was jointly leased, on a month-to-month basis, on May 6, 1991, or shortly before the bankruptcy petitions were filed. No records of any value were kept in the office, and little, if

any, business was conducted from the office. Additionally, the only mail received at the office was bank statements for accounts set up concurrently with the lease.[5] The Court also notes that counsel for the Clubs have not advanced the existence of the lease as grounds for proper venue in their final brief. Thus, 28 U.S.C. § 1408(1) provides no grounds for proper venue in this district.

■ The crux of the argument for the Illinois and Boca Raton Clubs is that they are "affiliates" of the Atlanta Club, and as such, venue is proper in this district under 28 U.S.C. § 1408(2).[6] Counsel argues that since the Naiman Trust is the general partner of the Atlanta Club, and owns, through a wholly-owned subsidiary, a majority interest in the general partners of the Illinois and Boca Raton Clubs, the three Clubs are affiliated. Thus, if the Court finds that the Clubs are affiliated, venue for the Illinois and Boca Raton Clubs would be proper in this district, as the Atlanta case would be properly "pending" in this district.

The definition for the term "affiliate," as used in 28 U.S.C. § 1408, is found in 11 U.S.C. § 101(2).[7] 1 *Collier on Bankruptcy*

4. 28 U.S.C. § 1408 states:
   Except as provided in section 1410 of this title [28 USCS § 1410], a case under title 11 [11 USCS §§ 101 et seq.] may be commenced in the district court for the district—
   (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or
   (2) in which there is pending a case under title 11 [11 USCS §§ 101 et seq.] concerning such person's affiliate, general partner, or partnership.

5. The evidence shows that bank accounts were set up for the Clubs, using the Peachtree City address, shortly before the bankruptcy petitions were filed. An initial deposit of $100.00 was made to open the accounts, and the only subsequent activity was monthly service charges.

6. Another Sporting Club, Tysons II, Ltd. filed a bankruptcy petition in the Southern District of

California on August 5, 1991 (Case No. 91-08787). Although the Naiman Trust is the managing partner of that Club, the Court notes that no argument has been made as to why that case is not also "affiliated" with the cases now before the Court.

7. 11 U.S.C. § 101(2) states, in pertinent part:
   "affiliate" means—
   (A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—
   (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
   (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;
   (B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor ...

　　　·　　　·　　　·　　　·　　　·

¶ 3.02–1(d) (15th ed.1989); *see also In re World of English, N.V.*, 16 B.R. 817 (Bankr.N.D.Ga.1982) (applying § 101(2) under former venue statute); *In re Petroleum Tank Lines, Inc.*, 10 B.R. 286, 288 (Bankr.W.D.N.Y.1981). Unfortunately, the statute does not specifically address the relationships between the entities in this case, and the case law provides a paucity of guidance. *In re Waits*, 70 B.R. 591, 595 (Bankr.S.D.N.Y.1987). The record reveals that the three Clubs are separate legal entities, with three separate general partners. None of the general partners are debtors in this district. However, the Clubs' counsel argues that the Clubs are in fact controlled by one person, Jack Naiman, through the Naiman Trust. As previously stated, the Naiman Trust is the general partner of the Atlanta Club. In addition, the Naiman Trust, through subsidiaries, holds an indirect interest in the general partners of the Illinois and Boca Raton Clubs. In other words, in both the Illinois and Boca Raton Clubs, the Naiman Trust owns an interest in a corporation, which owns an interest in the general partner of the debtor.

Such an indirect relationship does not come within § 101(2)(A) so as to confer proper venue in this district. *In re Maruki U.S.A. Co.*, 97 B.R. 166 (Bankr. S.D.N.Y.1988). In *Maruki*, the court was faced with a relationship between the two debtor entities much like the relationship between the Clubs at Illinois and Boca Raton and the Naiman Trust. In that case, a corporate debtor owned a 100% interest in the general partner of a limited partnership, also in bankruptcy. *Id.* at 169. The court held that since neither entity held or controlled 20% or more of the voting securities, nor any interest at all, of the other, they were not "affiliates" as defined in § 101(2)(A). *Id.* Moreover, the court dismissed the argument that a limited partnership ought to be considered as having

voting securities, thus bringing such a relationship within the definition of "affiliate":

Congress clearly understood the differences between corporations, unincorporated associations, and limited partnerships when it drafted the Code. Thus, for example, it specifically defined "corporation" to exclude a limited partnership.[8] Had Congress meant to include within 101(2)(A) a limited partnership, it would not have used the words "outstanding voting securities of the debtor."

*Id.* Although *Maruki* involved a "vertical" relationship between the two debtor entities, the Court finds the decision persuading. In the case *sub judice*, counsel would have the Court find a horizontal affiliation between the Clubs by similarly finding a vertical affiliation between the Naiman Trust and the individual Clubs. Such an expansion of § 101(2)(A) is improper, and clearly prohibited by *Maruki*. In fact, the relationship between the Naiman Trust and the Illinois and Boca Raton Clubs is even more indirect than the relationship addressed in *Maruki*.[9] Thus, the Court finds that the three Clubs are not affiliates as defined by § 101(2)(A).

Section 101(2)(B), which deals with corporate affiliates, and § 101(2)(C) and (D) are not applicable to the present facts, as the Clubs are limited partnerships, as are the general partners of the Illinois and Boca Raton Clubs, and they are not parties to any lease or operating agreement with one another.

Clubs' counsel also argues that, under 28 U.S.C. § 1408(2), it is not necessary that the debtor's affiliate be a debtor in this district, but only that a case "concerning" a debtor's general partner or affiliate be pending in the district. They argue that the Atlanta Club proceeding properly before this Court at least "concerns" the general partner or affiliate of the Illinois and Boca Raton Clubs. This argument is not persuading. As discussed, the Court has

---

**8.** 11 U.S.C. § 101(9)(B) (footnote added).

**9.** In *Maruki*, the relationship between the two entities involved two "levels" of ownership between the corporate and limited partnership en-

tities. 97 B.R. at 167, 169. In contrast, the facts of the present case show that the Naiman Trust is three ownership "levels" above the Illinois and Boca Raton Clubs. See Exhibit Nos. 2 and 3.

concluded that the three Clubs are not "affiliates" within the meaning of the statute, nor are the general partners affiliates. Thus, the Atlanta Club proceeding does not "concern" the affiliate or general partner of the Illinois or Boca Raton Clubs. Furthermore, if counsel's argument was taken to its logical extreme, venue in these three bankruptcy proceedings would properly lie not only in the district where the three Clubs were located, but also in the district where any of the general partners were located, or where their general partners were located. Such an expansive interpretation could not have been the intent of Congress. Therefore, since the Illinois and Boca Raton Clubs are not "affiliates" of the Atlanta Club, and do not have a principal place of business or domicile in the Northern District of Georgia, the Court concludes that venue in this district is improper.

## 2. RETENTION OF AN IMPROPERLY VENUED CASE

▮▮▮ The next issue for the Court to decide is whether an improperly venued case may be retained, or whether it must be transferred or dismissed pursuant to Federal Rule of Bankruptcy Procedure 1014(a)(2).[10] The parties have correctly pointed out that there is a split of authority on whether a court may retain an improperly venued case. *See In re Pick*, 95 B.R. 712, 715 (Bankr.D.S.D.1989); *In re Lazaro*, 128 B.R. 168 (Bankr.W.D.Tex.1991). This Court thinks that the better view, and one that is consistent with the wording of the Rule and the advisory committee notes, is that a court must either dismiss or transfer an improperly venued case.

**10.** Federal Rule of Bankruptcy Procedure 1014(a)(2) states:

(2) *Cases Filed in Improper District.* If a petition is filed in an improper district, on timely motion of a party in interest and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be dismissed or transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

**11.** 28 U.S.C. § 1412 states:

A district court may transfer a case or proceeding under title 11 to a district court for

The statute which governs change of venue for bankruptcy proceedings is 28 U.S.C. § 1412.[11] As is evident, this statute does not expressly address cases in which venue is improper. *Pick*, 95 B.R. at 715. However, when Rule 1014, which does address improperly venued cases, was amended in 1987, the advisory committee added an explanation:

Both paragraphs 1 and 2 of subdivision (a) are amended to conform to the standard for transfer in 28 U.S.C. § 1412. Formerly, 28 U.S.C. § 1477 authorized a court either to transfer or retain a case which had been commenced in a district where venue was improper. However, 28 U.S.C. § 1412, which supersedes 28 U.S.C. § 1477, authorizes only the transfer of a case. The rule is amended to delete the reference to retention of a case commenced in the improper district. Dismissal of a case commenced in the improper district as authorized by 28 U.S.C. § 1406 has been added to the rule. If a timely motion to dismiss for improper venue is not filed, the right to object to venue is waived.

Fed.R.Bankr.P. 1014 (Advisory Committee Note 1987). Section 1477(a),[12] which was superceded by § 1412, was similar to the current § 1412, except that it expressly applied to improperly venued cases. Thus, when § 1477 was not enacted, there was no statute which dealt specifically with improperly venued cases. *Pick*, 95 B.R. at 715. This Court agrees with the court in *Pick* that when Congress failed to enact § 1477, they intended that improperly venued cases be treated the same as all other

another district, in the interest of justice or for the convenience of the parties.

**12.** 28 U.S.C. § 1477, enacted in 1978, but later superseded, stated in pertinent part:

(a) The bankruptcy court of a district in which is filed a case or proceeding laying venue in the wrong division or district may, in the interest of justice and for the convenience of the parties, retain such case or proceeding, or may transfer, under section 1475 of this title, such case or proceeding to any other district or division.

federal civil actions under § 1406, and that upon the motion of a party in interest, the case must either be dismissed or transferred. *Id.* This view is consistent with both Rule 1014(a) and the advisory committee notes. *Id.; see also In re Townsend,* 84 B.R. 764, 767 (Bankr.N.D.Fla.1988); *In re Frame,* 120 B.R. 718, 722 (Bankr. S.D.N.Y.1990); *ICMR, Inc. v. Tri–City Foods, Inc.,* 100 B.R. 51, 54 (D.Kan.1989); *In re Greiner,* 45 B.R. 715 (Bankr. D.N.D.1985). Thus, the only situation in which the Court may retain an improperly venued case is where no party in interest files a timely objection. *ICMR,* 100 B.R. at 54.

The Court is aware that other courts have reached the opposite conclusion. *Lazaro,* 128 B.R. at 175; *In re Leonard,* 55 B.R. 106 (Bankr.D.D.C.1985); *In re Boeckman,* 54 B.R. 110 (Bankr.D.S.D.1985). However, this Court respectfully disagrees with the holdings of these cases. Accordingly, since venue in this case is improper, the only alternatives are to dismiss the proceedings or transfer them to the proper district.

## 3. INTEREST OF JUSTICE

Although it has been determined that venue is improper in this district, and the case must be transferred, the Court will address the arguments of the parties concerning the district which would better serve the interest of justice and the convenience of the parties.

■ Most courts that have addressed the issue, including this Court, have held that six factors are to be considered in making the determination of whether to transfer a case in the interest of justice or for the convenience of the parties. The six factors are:

1. The proximity of creditors of every kind to the Court;
2. The proximity of the debtor to the Court;
3. The proximity of the witnesses necessary to the administration of the estate;
4. The location of the assets;
5. The economic administration of the estate; and
6. The necessity for ancillary administration if bankruptcy should result.[13]

*In re Commonwealth Oil Refining Co.,* 596 F.2d 1239 (5th Cir.1979); *In re Butcher,* 46 B.R. 109 (Bankr.N.D.Ga.1985); *In re Geis,* 66 B.R. 563 (Bankr.N.D.Ga.1986); *see also In re Paul Rothman Industries, Ltd.,* Case No. 84–03194A (Bankr.N.D.Ga. September 13, 1984) (B.J. Kahn); *Waits,* 70 B.R. at 594–95; *In re Ridgely Communications, Inc.,* 107 B.R. 72 (Bankr.D.Md. 1989); *In re Pope Vineyards,* 90 B.R. 252 (Bankr.S.D.Tex.1988); *Townsend,* 84 B.R. at 767.

The record shows that the Illinois and Boca Raton Clubs have few connections with this district. As previously noted, the Illinois Club's sole place of business and sole assets are in Chicago Illinois, and the majority of creditors are located in Illinois. Moreover, C. Itoh, the largest secured creditor, is a Japanese concern, and is not located in Georgia. Similarly, the Boca Raton Club's sole place of business and sole assets are located in Boca Raton, Florida, as are most of the creditors. Additionally, Mitsui, the largest secured creditor is not located in Georgia. Clearly, the location of the Clubs and their assets, and the proximity of the creditors and witnesses support the proposition that these cases should be transferred.

■ The main argument advanced by the Clubs is that the efficient and economic administration of the estates would be better served if this Court retained all three cases. This is the most important factor to be considered in deciding whether to transfer or retain a case in the interest of justice. *Commonwealth Oil,* 596 F.2d at 1247; *Butcher,* 46 B.R. at 112. Counsel

---

**13.** These factors are to be considered in determining whether a case should be transferred in the interest of justice or for the convenience of the parties where venue is initially proper in this district. This issue is quite distinct from deciding what a court should do with an improperly venued case. *In re Cunningham,* No. 88–4045, 1988 WL 148642 (Bankr.D.S.D. September 30, 1988).

for the Clubs first reiterate their argument that all of the Clubs are, in fact, controlled by Jack Naiman through the Naiman Trust. Second, they allege that C. Itoh and Mitsui have, from the beginning, treated the transactions with the Clubs as one joint venture between themselves, Jack Naiman, and the other loan participants. Moreover, they also point to a cross-default clause contained in the loan documents between Mitsui and the Clubs at Atlanta and Boca Raton, and argue that this is evidence that the loans were related and part of one transaction. The Clubs have also stated their intention to reorganize as a single entity, and toward that end, will file a joint plan of reorganization with the intent of becoming a single entity. They have produced witnesses that testified that additional financing and investments would be available if the Clubs were reorganized as a single, unified entity. Thus, the central argument of the Clubs is that they were treated as a single entity from the beginning of the relationship with C. Itoh and Mitsui, and they should be treated as such during the reorganization, and any attempt to split them up into separate entities for reorganization would seriously hamper the administration of the estates.

Conversely, C. Itoh and Mitsui argue that they never treated the relationship as one joint venture between either themselves or Jack Naiman. They point out the fact that C. Itoh and Mitsui are separate, distinct legal entities, publicly-held, and share no common officers or directors. Further, they argue that each of the loans were made separately, and the decisions to make each loan were based on different criteria for each Club. Finally, C. Itoh and Mitsui state their intention to strongly object to any joint reorganization. Thus, the arguments of C. Itoh and Mitsui center on the fact that the loans were separate, with two made by Mitsui and one by C. Itoh, and were never intended as part of a joint venture. As a result, they contend that the administration of the estates would be better served if the cases were transferred to the respective location of the Clubs' principal places of business and assets.

■ The only conclusion to be drawn from the evidence is that the Illinois and Boca Raton cases should be transferred. While it may be true that the Naiman Trust provides some "common thread" between the Clubs, this fact alone does not persuade this Court that the economic administration of these cases would be better served in this forum. It has been determined that the Clubs are not affiliated and share no common ownership. Moreover, the three Clubs have different sets of unsecured creditors. While it is not clear what the exact intent of C. Itoh and Mitsui was at the time of the loan, it is clear that the loan to the Illinois Club was made by C. Itoh, and it is also clear that the loans to the Atlanta and the Boca Raton Clubs were made by Mitsui, two distinctly different entities. Therefore, since the Clubs are independent concerns, with separate assets and separate creditors, their estates must be administered in the court closest to the Clubs' assets and the bulk of its creditors. *Pope Vineyards*, 90 B.R. at 259. The Clubs have presented no evidence to show that the cases could not be speedily and economically administrated in other forums. Accordingly, the Court finds that the interest of justice and the convenience of the parties are better served if the cases were transferred. Consequently, even if the Court did have the power to retain the improperly venued cases, it would decline to do so.

### 4. WAIVER OF VENUE OBJECTION

■ Counsel for the Clubs argue that C. Itoh and Mitsui have waived their objection to venue by seeking substantial affirmative relief in this Court. While C. Itoh and Mitsui have filed motions for the appointment of a Trustee and motions regarding cash collateral, as well as participating in the discovery process, this activity does not amount to a waiver of the objection. The movants filed a timely objection to venue approximately one week after the bankruptcy petitions were filed. The fact that C. Itoh and Mitsui have filed motions involving the appointment of a trustee and cash collateral does not constitute a waiver of this objection.

## CONCLUSION

This Court finds that ample evidence has been produced to show that the debtor Clubs do not meet the requirements of 28 U.S.C. § 1408, thus making venue improper in this district. Therefore, pursuant to Federal Rule of Bankruptcy Procedure 1014(a)(2), this Court must either dismiss or transfer the case. Accordingly, there being no basis to dismiss the cases at this time, the Motions to Transfer Venue filed by C. Itoh, Mitsui, and Corrigan are GRANTED, and the Motions to Dismiss, pursuant to Federal Rule of Bankruptcy Procedure 7041(b), filed by the Sporting Club at Illinois Center, Ltd. and Boca Raton Sports Associates, Ltd. are DENIED. It is further ORDERED that the Sporting Club at Illinois Center, Ltd. proceeding be transferred to the United States Bankruptcy Court for the Northern District of Illinois, and that the Boca Raton Sports Associates, Ltd. proceeding be transferred to the United States Bankruptcy Court for the Southern District of Florida.

IT IS SO ORDERED.