In re ELEPHANT BAR RESTAURANT, INC., Debtor.

Thomas AGRESTI, Trustee, Plaintiff,

v.

EBAR EAST, INC., Defendant.

Bankruptcy No. 94–10054–MBM.

United States Bankruptcy Court, W.D. Pennsylvania.

June 7, 1996.

Kenneth D. Chestek, Thomas Agresti, Trustee, Agresti & Agresti, Erie, PA, for Thomas Agresti, Trustee.

Grady L. Pettigrew, Arter & Hadden, Columbus, OH, for EBAR East, Inc.

1. Although the petition in this case was filed *involuntarily* on January 28, 1994, the order for

## MEMORANDUM OPINION

M. BRUCE McCULLOUGH, Bankruptcy Judge.

### STATEMENT OF FACTS

Thomas Agresti, plaintiff and Chapter 7 trustee in this bankruptcy case, brings this motion requesting that this Court enter an order to transfer into this Court another bankruptcy case presently pending in the U.S. Bankruptcy Court for the Southern District of Ohio. EBAR East, Inc., defendant and the Chapter 11 debtor in the other bankruptcy case, objects to plaintiff's motion and has moved for its dismissal. Plaintiff asserts that this Court may cause the transfer into this Court of EBAR East's bankruptcy case pursuant to Rule 1014(b) of the Federal Rules of Bankruptcy Procedure (FRBP). Plaintiff also asserts that, pursuant to FRBP Rule 1014(b) and because the bankruptcy petition in this case was filed prior to that for the case in the Southern District of Ohio (January 28, 1994,[1] as opposed to December 7, 1995), the proceedings in the Southern District of Ohio should be stayed pending this Court's decision regarding the requested transfer. Although plaintiff has also requested additional relief in his motion (ie., joint administration of this case with EBAR East's Chapter 11 case pursuant to FRBP Rule 1015(b), and/or substantive consolidation of the bankruptcy estates of the 2 debtors pursuant to this Court's equitable powers), this Court has instructed the parties that such relief will be the subject of a later hearing in the event that it remains a viable option. Therefore, this decision deals with only the transfer motion under FRBP Rule 1014(b).

### DISCUSSION

I. *Whether this Court should transfer EBAR East's Chapter 11 case into this Court pursuant to Bankruptcy Rule 1014(b)?*

FRBP Rule 1014(b) provides, in pertinent part:

relief did not occur until October 26, 1995.

If petitions commencing cases under the [Bankruptcy] Code are filed in different districts by or against . . . a debtor and an affiliate, . . . [FRBP Rule 1014(b) permits the court] in which the petition filed first is pending . . . [to] determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed.

Fed.R.Bankr.P. Rule 1014(b), 11 U.S.C.A. (West Supp.1995). "[T]he proceedings on the other petitions shall be stayed by the courts in which they have been filed until th[is] determination is made." *Id.* Thus, a threshold issue in the application of this rule is whether EBAR East is an affiliate of the debtor in this case, Elephant Bar Restaurants, Inc. (EBRI). A definition of "affiliate" is found at 11 U.S.C. § 101(2), and provides, in pertinent part, that:

"affiliate" means—

(A) [an] entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . .; [or]

(B) [a] corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor. . . .

11 U.S.C.A. § 101(2) (West 1993).

■ Plaintiff asserts that an affiliate relationship exists between the two debtors for several reasons. Each one of those reasons is addressed by this Court below:

(1) Thirty percent of EBAR East's stock is directly owned by Chris Nancarrow, who also owns individually ten percent of EBRI. This particular individual also possesses a remainder interest in a family trust which, by way of ownership of 2 intermediate entities,[2] owns a controlling interest in EBRI. Plaintiff asserts that Chris Nancarrow's interest in the family trust may be counted towards the requisite 20 percent ownership in EBRI which is necessary to implicate § 101(2)(B). However, while this argument is somewhat alluring, it cannot be sanctioned by this Court for several reasons.

First, after an examination of relevant case law and the Bankruptcy Code itself, this Court is not certain whether it can sanction, in this case, attribution of equity ownership via a multiple tiered ownership structure. Language from other opinions appears to indicate that such attribution is perhaps permissible—by virtue of the term "control" in §§ 101(2)(a) and 101(2)(B)—but only when more than fifty percent ownership exists with respect to each tier of a structure. *See, e.g., Matter of Sporting Club at Illinois Center,* 132 B.R. 792, 796–97 (Bankr.N.D.Ga.1991). However, such is clearly not the case here as this Court notes, upon an examination of the pertinent trust document, that Chris Nancarrow is but one of 4 presently living remaindermen,[3] all of whom are to receive equal (ie., ¼) shares in the event that they survive the life tenant.[4] Therefore, with respect to the top tier of the ownership structure, Chris Nancarrow owns less than fifty percent.

For this Court to permit attribution in this instance would essentially require attribution analogous to § 318(a)(2)(B)(i) of the Internal Revenue Code (IRC).[5] This Court is not aware of any case law supporting use of such an attribution method when applying § 101(2) of the Bankruptcy Code. Furthermore, if this Court were to adopt for bankruptcy purposes the attribution rules set forth in IRC § 318(a)(2)(B)(i), less than ten

---

2. According to pages 6–7 of plaintiff's brief in support of his motion, this trust, the Nancarrow Family Living Trust, owns one hundred percent of Nanco Enterprises, Inc., which in turn owns eighty-four percent of Nanco Restaurants, Inc., which in turn owns eighty percent of EBRI. Nanco Enterprises also directly owns ten percent of EBRI.

3. The Nancarrow Family Living Trust Agreement, page 2, Article 4.

4. The Nancarrow Family Living Trust Agreement, page 3, Article 6.2.

5. IRC § 318(a)(2)(B)(i) provides, in pertinent part:

Stock owned, directly or indirectly, by or for a trust . . . shall be considered as owned by its beneficiaries in proportion to the actuarial interest of such beneficiaries in such trust.

IRC § 318(a)(2)(B)(i) (West 1988).

percent of EBRI's ownership would be attributed to Chris Nancarrow by way of the shares owned by the family trust. This is because "[s]tock owned, directly or indirectly, by or for a trust ... shall be considered as owned by its beneficiaries in proportion to the *actuarial interest* of such beneficiaries in such trust." IRC § 318(a)(2)(B)(i) (emphasis added).[6] Thus, it would not, in any event, be proper to merely multiply the various ownership percentages of the tiers and then ascertain whether such product equaled or exceeded the additional ten percent ownership needed to support a finding of an affiliate relationship under 11 U.S.C. § 101(2)(B).

Finally, and perhaps most importantly, this Court's examination of the pertinent trust document also reveals that Chris Nancarrow presently possesses only a contingent remainder interest in the indirect ownership of EBRI.[7] This Court does not believe that such an interest is substantial enough to attribute to Chris Nancarrow the indirect ownership of EBRI shares held by the family trust. Although not quite certain whether the result would be different if he presently possessed a vested remainder interest in such indirect ownership, this Court, on the basis of all of the above, concludes that Chris Nancarrow presently does not own, either directly or indirectly, the indirect ownership in EBRI held by the family trust. Because Chris Nancarrow only owns the ten percent interest in EBRI that he holds directly, § 101(2)(B) is not applicable on this basis.

■ (2) Fifty percent of the stock in EBAR East is owned by Richard Bruce, an individual who also has an employment contract with EBAR East. That individual's stock ownership in EBAR East is restricted in that he is contractually obligated, upon potential termination of his employment with EBAR East, to offer to sell such stock to EBRI. Additionally, he may only receive his original cost in such shares in return for such sale, subject to a vesting schedule whereby a certain portion of such stock may be offered back at a price other than cost. Such portion is equal to 20% of this individual's shares multiplied by each full year of his employment from February 1, 1993.

Plaintiff asserts that, because, pursuant to this arrangement, Bruce's employment may be terminated at will, Bruce's ownership interest in EBAR East (or at least 40 percent of it) should be attributed to EBRI. Therefore, argues plaintiff, § 101(2)(B) is implicated. However, this Court cannot agree with this contention either. Notwithstanding the option held by EBRI with respect to Bruce's ownership interest in EBAR East, there is no dispute that Bruce presently possesses such ownership interest. He is also still presently employed, and even were he not, it is speculative at best whether his ownership interest would be purchased by EBRI given that EBAR East is also presently in bankruptcy. Therefore, § 101(2)(B) is not applicable on this basis either.

■ (3) Chris Nancarrow, who owns thirty percent of EBAR East, is also either the president or chief executive officer of Nanco Restaurants, Inc. (NRI), which is an intermediary entity that directly owns eighty percent of EBRI. On the basis of his position as an officer of NRI, plaintiff asserts that Chris

6. IRC § 318(a)(2)(C) permits attribution to the family trust of the EBRI stock owned by the intermediary corporations, or an ownership percentage of 77.2 percent [ie., (1.0)(.84)(.80) + (1.0)(.10)]. Pursuant to IRC § 318(a)(2)(B)(i), Chris Nancarrow, by attribution, owns 25 percent of the actuarial interest of all 4 remaindermen in the 77.2 percent ownership interest, or (x)(.25)(.772). x = the actuarial factor set forth in Treas.Reg. 20.2031-7(d)(6) Table S using a discount factor of 9.6 percent, which is the applicable rate set forth in Revenue Ruling 91–48 Table 5 for September 1991, which was the month in which the family trust was established. Although this Court is unaware of the age of the life tenant at the date of the trust's establishment,

which is necessary to accurately determine such factor, this Court notes that such factor is almost certainly less than .5. Setting x = .5, Chris Nancarrow's attributed ownership percentage from the trust becomes (.5)(.25)(.772), or *.0965* (ie., *9.65 %*), which is less than the necessary ten percent.

7. The Nancarrow Family Living Trust Agreement, Articles 6.2 (division by Trustee of "trust estate into as many equal shares as there are children of mine *then living* ...") and 7.1 ("Each share allocated to a *living child* of mine shall be distributed ..."), at pages 3–4 (emphasis added).

Nancarrow controls, for purposes of § 101(2)(B), all of NRI's ownership interest in EBRI, or eighty percent. Because he has a similar executive position with EBRI, plaintiff apparently also asserts that Chris Nancarrow controls one hundred percent of EBRI. Plaintiff also points out that another individual, David Nordahl, who owns directly twenty percent of EBAR East, also controls, either directly or indirectly, EBRI because of his position as chief financial officer of EBRI and NRI.

This Court, however, disagrees with these conclusions for a couple of reasons. First, this Court holds, as a matter of law, that "control," as that term is used in 11 U.S.C. § 101(2), can only be attained by way of equity ownership, either direct or indirect (ie., tiered), and not by mere virtue of an official position. For this Court to hold otherwise would render superfluous the phrase "holds with power to vote" also contained in §§ 101(2)(A) and 101(2)(B) because "control" over securities by virtue of an official position can only occur if such position necessarily carries with it the power to hold and vote such securities. In other words, plaintiff's position reduces to equating "holds with power to vote" to "control," which is a nonsensical result that could not have been intended by Congress.[8] Moreover, plaintiff has not referred this Court to any case law that would support its position. After an extensive search, this Court is satisfied that none exists, thus serving to confirm this Court's conclusion. Secondly, to the extent that either of these individuals hold securities with the power to vote them by virtue of their official positions, they do so only "in a fiduciary or agency capacity." This being the case, if they do not have "sole discretionary power to vote such securities," §§ 101(2)(A) and 101(2)(B) would not apply given the exceptions at 11 U.S.C. §§ 101(2)(A)(i), (ii) and 101(2)(B)(i), (ii).[9] This Court, after examining the deposition of DeEtta Nancarrow, who is currently the sole trustee and income beneficiary of the family trust which indirectly owns the majority interest in EBRI, concludes that neither of these officers possess sole discretionary power to vote such securities.[10] Therefore, § 101(2) would not apply for this reason also.

## CONCLUSION

In summary, although plaintiff's pleadings clearly demonstrate close relationships among numerous entities that may have an important bearing on other proceedings that have already been, or may be, initiated with respect to EBRI's bankruptcy case, such pleadings simply do not fulfill the technical requirements embodied in the Bankruptcy Code's definition of "affiliate." Therefore, because EBAR East is not an affiliate of EBRI, plaintiff's motion under FRBP Rule 1014(b) to transfer EBAR East's bankruptcy case from the Southern District of Ohio into this Court must be, and it hereby is, **DE-**

8. "[C]ontrol of ... [a] debtor" by virtue of an official position, or essentially operating control of such entity, may be sanctioned as a method by which a relationship as an "insider" is established. See 11 U.S.C. § 101(31)(B)(iii). Nevertheless, such operating control, as noted in the text preceding this footnote, does not establish control over securities owned by a corporation unless such operating control also entails possession of such securities with a discretionary power to vote them. As mentioned above, however, possession of securities with the power to vote them cannot be equated to "control" as that term is used in §§ 101(2)(A) and 101(2)(B) because those terms would then have identical meanings.

9. An affiliate does not mean "an entity that holds such securities (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote." 11 U.S.C.A. §§ 101(2)(A)(i), (ii) and 101(2)(B)(i), (ii) (West 1993).

10. According to the deposition of DeEtta Nancarrow, February 16, 1996, at page 23 (lines 1–12), she maintains the authority to make ultimate decisions regarding Nanco Enterprises, Inc. (NEI), which owns a controlling interest in NRI and, ultimately, in EBRI. Since she is also the sole trustee for the Family Trust, which is the sole stockholder in NEI, she effectively retains discretionary power to vote the securities held by NRI and EBRI. Therefore, even if either of these individuals have discretionary power to vote such securities in their capacities as corporate officers of NRI and EBRI, they do not hold such power by themselves (ie., they are "without sole discretionary power to vote such securities").

**NIED WITH PREJUDICE.**[11]  An appropriate order will be entered.

---

**11.**  Because of the determination that EBAR East is not an affiliate of EBRI, this Court need not address whether "the interest of justice" or "the convenience of the parties" would dictate a transfer of EBAR East's bankruptcy case into this Court.